JOURNAL ENTRY AND OPINION
This is an appeal from an order of Visiting Judge James J. Sweeney following a jury trial. Defendant-appellant Yanira Santini-Diaz claims it was error to grant appellees, Gloria and Mark Richards, a new trial following a jury verdict in favor of Mrs. Richards only, on the Richardses' complaint for damages arising out of a car accident. She asserts there was sufficient evidence questioning Mrs. Richards' injuries and the necessity and costs of her medical treatment to support a jury award of one third of Mrs. Richards' purported medical expenses and lost wages and to award her husband nothing on his claim for loss of consortium. She further argues that by paying the jury award, which check was cashed by the Richardses' lawyer, the judge was divested of jurisdiction to rule on the motion for a new trial. We disagree and affirm.
On July 27, 1995, as Gloria Richards (Richards) was driving her car eastbound on Franklin Avenue toward its intersection with West 52nd Street in Cleveland, Yanira Santini-Diaz (Santini) was driving her car northbound on West 52nd and failed to stop at the stop sign at the Franklin Avenue intersection, causing a collision between the two cars. The record reflects that Richards claimed injuries to her neck, upper and lower back and related pain and suffering which required significant medical care and caused her to lose time from her employment as a nurse's aide.
Richards and her husband filed a complaint against Santini on July 22, 1997, praying for medical expenses, lost wages, and compensation for pain and suffering, hedonic damages, and Mr. Richards' loss of consortium. Santini answered with a general denial and sundry affirmative defenses including contributory negligence, assumption of the risk, statute of limitations and lack of proximate cause. Although originally assigned to the Docket of Judge William Aurelius, on October 29, 1998, it was assigned to Visiting Judge James J. Sweeney for trial. Santini had stipulated her negligence, so the issues for the jury were proximate cause and damages.
Richards testified about her injuries and medical care including an emergency room visit made the day of the accident, as well as subsequent treatment by multiple physicians at different facilities. She underwent physical therapy, a bone scan, nerve conduction studies, and three MRI scans. She told of ongoing, chronic pain after the accident that went unrelieved until she received a series of trigger point injections at Meridia Hillcrest Hospital in the Spring of 1996. Although the injections relieved most of the pain in her neck and shoulder area, she claimed the pain in her lower back had continued. The testimony of two physicians, Dr. Wilfredo Paras[1] and Dr. Harold Mars, provided fact and opinion testimony relating her injuries and conditions to the 1995 auto accident.
Santini's defense was directed at minimizing Richards' injuries, he argued that: (1) the impact was minor and any possible injury could not be as serious as claimed; (2) her treating physicians employed unnecessary diagnostic and treatment methods; and (3) her claims of pain were caused by pre-existing or subsequent back injuries unrelated to the car accident. In support of these arguments Santini's lawyer elicited testimony that Richards' husband had called Alan Nussbaum, his workers' compensation lawyer, for the name of a physician to treat his wife; that Nussbaum referred Richards to the Rockside Medical Center where she was treated by Drs. Charms and Paras; that the patients of the Rockside Medical Center and its affiliate, the Parma Therapy Center, are almost exclusively composed of workers' compensation claimants and persons with accident related claims; and that Nussbaum initially represented the Richardses under a contingent fee contract.
Santini's lawyer also questioned the Richardses and Mrs. Richards' physicians about whether each knew that both the Rockside and Parma centers were owned by an attorney named Michael Shane. No evidence, however, was presented on Shane's, or anyone's, ownership of these facilities. Nussbaum no longer represented the Richardses and did not testify, nor did Shane. Santini's lawyer disputed whether Richards was referred to Dr. Mars by Nussbaum or by Dr. Paras, and also questioned the consistency and veracity of Richards' testimony on her prior medical history, which included a diagnosis of scoliosis and a childhood back injury from a fall out of a second-story window.
The record does not reflect that Richards' lawyer objected to the introduction of any evidence at trial, nor did he file any written or oral motion in limine to prevent these references to a medical-legal cabal, although it appears from voir dire through closing argument the defense centered on the issue of whether the Richardses, Nussbaum, and her physicians acted individually or in concert to concoct or exaggerate her injuries in order to obtain a larger settlement or judgment.
Richards presented exhibits totaling $20,000 in medical expenses, estimates of over $13,000 in lost wages and testimony supporting her claims of pain and suffering and her husband's loss of her services. The testimony of Dr. Robert Corn, who examined Richards at Santini's lawyer's request, contradicted much of the findings of Drs. Paras and Mars and questioned the nature and extent of the medical treatment Richards received.
The unanimous jury verdict awarded Richards $11,740.25 in compensation and $0 to her husband for his claim. Santini's automobile liability insurance carrier promptly forwarded a check in the amount of the verdict to the Richardses' lawyer, who negotiated the check and deposited the funds in his IOLTA escrow account. Apparently no releases or satisfaction of judgment were endorsed by the Richardses or their lawyer. The Richardses then filed a motion for a new trial claiming that passion and prejudice influenced the jury's decision. The Richardses' lawyer claimed the insurance carrier then demanded return of its money and he complied.
The judge granted the motion for new trial, finding in relevant part:
 Pursuant to Civil Rule 59(A)(4) and (6), Plaintiff's Motion for New Trial is hereby GRANTED. The jury's award to the Plaintiffs, Gloria Richards and Mark Richards was inadequate in that the jury's award failed to compensate Gloria Richards for her medical expenses, lost wages and pain and suffering and failed to compensate Mark Richards for his loss of consortium. The jury's award appears to have been given under the influence of passion or prejudice and is not sustained by the weight of the evidence.
Santini's second assignment of error states:
 II. THE TRIAL COURT ERRED IN GRANTING PLAINTIFFS-APPELLEES' MOTION FOR NEW TRIAL WHEN PRIOR TO THE FILING OF THE MOTION FOR NEW TRIAL THE COURT LOST JURISDICTION OVER THE CLAIMS DUE TO THE PLAINTIFFS-APPELLEES' NEGOTIATION AND SATISFACTION OF DEFENDANT-APPELLANT'S CHECK PAID IN THE AMOUNT OF THE FINAL JUDGMENT RENDERED BY THE JURY ON ALL ISSUES ALLEGED IN THE COMPLAINT AND LITIGATED AT TRIAL.
Santini submits that the acceptance and cashing of the insurance company's check by the Richardses' lawyer satisfied the judgment and precluded any appeal and, by extension, also deprived the trial judge from jurisdiction to rule on the motion for a new trial. She does not address the fact that the money was returned to and accepted by her insurance carrier nor, apparently, that receipt of the carrier's check was not contingent upon execution of releases or a satisfaction of judgment. We understand the holding in Blodgett v. Blodgett (1990),49 Ohio St.3d 243, 551 N.E.2d 1249, where the wife executed a satisfaction of judgment in order to receive and utilize over $2,000,000 from an escrow account but sought to continue her appeal on the basis that she was under financial duress. We do not agree, however, that under the facts of this case the judge was without jurisdiction to rule on a post-trial motion and Santini offers us no authority to support her position. Because there is no evidence that Richards accepted Santini's check as satisfaction of all or any portion of the judgment and her lawyer returned the money from an insurance company check he cashed, we find this assignment of error without merit.
Santini's remaining assignment of error states:
 I. THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED BY IMPROPERLY ORDERING A NEW TRIAL PURSUANT TO CIV.R.
59.
Santini criticizes both the method and the substance of the order granting a new trial on three issues. She first claims the judge failed to sufficiently identify the grounds upon which the new trial is granted. Civ.R. 59 does require a judge to specify the grounds upon which the new trial is granted because he has the ability to overturn a jury verdict, and his ruling in that regard is reviewed only under an abuse of discretion standard. Civ.R. 59; Antal v. Olde Worlde Products, Inc. (1984), 9 Ohio St.3d 144, 146,459 N.E.2d 223, 226. The judge is required to state the basis for his ruling to ensure meaningful review on appeal. [W]hen the trial court offers no reasons for its decision, the court of appeals practically must defer to the trial court's conclusion that the verdict was against the weight of the evidence. Id.
While the judge's order in this case was brief, and in other circumstances might justify a remand to obtain a more thorough set of reasons, we find that the record amply indicates the reasons for the grant of a new trial here. The references to passion or prejudice under Civ.R. 59(A)(4), and to the weight of the evidence under Civ.R. 59(A)(6) find support in the same set of facts evident in the record, and require no special direction for discovery. Therefore, whether Antal's requirements are satisfied in any given case depends on the specific facts of that case; so long as the record is clear enough to provide meaningful review, there is no reason to order a remand for the judge to state reasons that are already apparent. On the record here and on the judge's ruling we can easily determine that the grant of a new trial was within his discretion; the result was not so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Nakoff v. Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1, 3.
Santini next suggests that the judge invaded the province of the jury by finding, in the face of conflicting, competent and credible evidence, that Richards was not compensated for her medical expenses, lost wages, and pain and suffering. As Richards presented claims for medical bills and lost wages greatly in excess of the verdict in addition to testimony on her pain, suffering and loss of enjoyment of life, the jury's verdict appears illogical particularly in light of the fact that Santini did not challenge any specific medical charge. Even Dr. Corn, while he opined that some of Richards' medical care was unwarranted, stopped short of claiming that any physician deliberately gave her unnecessary treatment. Santini never argued to the jury that Richards' husband had not lost any of his wife's services and tacitly agreed Richards did sustain injury by suggesting a jury award to her of $10,000.
The jury obviously agreed that Richards was injured as a proximate result of the auto collision but no interrogatory was submitted to delineate its compensation for each aspect of her claim. Therefore we have no way of knowing whether the jury found specific expenses improper; we know only that Santini did not specify which expenses should be excluded, but simply requested a general discounting based on the possibility that some of Richards' care was unnecessary or even fabricated.
Regardless of whether objections are made, the judge has discretion to admit or exclude evidence. Oakbrook Realty v. Blout (1988), 48 Ohio App.3d 69, 70, 548 N.E.2d 305, 307. When considering a motion for a new trial he has the discretion to review the evidence and determine the weight to be given. Under Civ.R. 59(A)(6), he concluded that the verdict was not sustained by the weight of the evidence. After hearing the evidence in this case, the judge reasonably could conclude that the jury imposed a general discount on Richards' damages based upon improper consideration of Santini's allegations of concocted claims.
Santini finally argues that the verdict was not so inadequate that it reflected the jury's passion or prejudice and cautions this court to be guided by our earlier decisions. We have held, however, that [A] trial court is afforded wide discretion in determining the propriety of a new trial. Bell v. Mt. Sinai Med. Ctr. (1994),95 Ohio App.3d 590, 595, 643 N.E.2d 151, 155. Moreover, we will reverse an order for a new trial only upon a showing of abuse of discretion.Kluss v. Alcan Aluminum Corp. (1995), 106 Ohio App.3d 528, 538-39, 666 N.E.2d 603, 610. A jury verdict should be set aside if a review of the record indicates any actions occurring during trial which reasonably can be said to have swayed the jury in the amount of damages it should award. Shimola v. Cleveland (1992), 89 Ohio App.3d 505, 514, 625 N.E.2d 626, 632. Here the judge made a finding from the evidence that the verdict was influenced by passion and prejudice and we cannot, from this record, find an abuse of discretion. This assignment of error is without merit.
It is ordered that the appellees recover from the appellant their costs herein taxed.
This court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
 __________________________ ANNE L. KILBANE, JUDGE
DIANE KARPINSKI, P.J. AND JAMES D. SWEENEY, J., CONCURS IN JUDGMENT ONLY WITH SEPARATE OPINION.
[1] Although not reflected in the trial transcript, the parties seem to agree that Dr. Paras's videotape deposition was played to the jury.